<u>**NOT FOR PUBLICATION**</u>                                                                 [41]


**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                    :
AIG BAKER SHOPPING CENTER       :
PROPERTIES, LLC,                          :          Civil Action No. 04-5849 (FLW)
                                                    :
            Plaintiff,                          :
      v.                                         :                  **OPINION**
                                                    :
DEPTFORD TOWNSHIP PLANNING   :
BOARD and TOWNSHIP OF DEPTFORD, :
                                                    :
            Defendants.                      :
_____:


<u>**WOLFSON, UNITED STATES DISTRICT JUDGE**</u>

  Presently before the Court is a Motion to Recuse, pursuant to 28 U.S.C. § 455, filed by

Intervenor J. Robert McGroarty ("McGroarty").  On April 29, 2005, United States Magistrate

Judge Joel B. Rosen granted McGroarty Intervenor status in this land use and civil rights case

between Plaintiff AIG Baker Shopping Center Properties, LLC ("Plaintiff"), a real estate

developer, and Defendants Deptford Township Planning Board ("the Board") and the Township

of Deptford ("Deptford") (collectively referred to as "Defendants").  McGroarty is a long-time

Deptford citizen who resides near the site of Plaintiff's proposed development project.

McGroarty opposes the project and has objected to Plaintiff's effort to secure preliminary site

plan approval from the Board.  McGroarty filed this Motion to Recuse after I granted Plaintiff's

first motion for partial summary judgment, and denied Defendants' and McGroarty's separate

cross-motions for summary judgment.[1]  McGroarty argues that my rulings on those motions are the result of bias in favor of Plaintiff, or, alternatively, present the appearance of such bias.

McGroarty's Motion to Recuse is essentially an expression of his dissatisfaction with my rulings on the parties' various prior motions, including his own cross-motion for summary judgment, which I decided on-the-record on July 20, 2005.  Of course, disagreement with a judge's rulings cannot, on its own, constitute the showing required to dictate recusal. Consequently, McGroarty offers four specific events as additional "evidence" of my bias in favor of Plaintiff.[2]  None of his allegations offer any basis to doubt my objectivity in this case, nor do they satisfy the applicable standard requiring recusal under § 455.  Accordingly, and for the following reasons, McGroarty's Motion to Recuse is denied.

## I.      BACKGROUND

Plaintiff is the contract purchaser of approximately seventy-two acres of property located at the intersection of New Jersey Highway Route 42 and Clements Bridge Road (County Road 544) in the Township of Deptford, and known as Block 1.01, Lot 2 on the Tax Map of the Township of Deptford ("the Property").  See Declaration of Milton Smith ("Smith Dec.") at ¶ 4.[3]

---

[1] On November 14, 2005, I granted Plaintiff's second motion for partial summary judgment against Defendants.

[2] Specifically: (1) my election not to hear, during July 20, 2005 argument on the parties' cross-motions for summary judgment, oral argument from McGroarty in support of his motion against Plaintiff; (2) later the same day, not inviting McGroarty to participate in an off-the-record settlement conference between Plaintiff and Defendants; (3) my alleged failure to comply with L. Civ. R. 58.1(b), and allow McGroarty seven days to object to the form of order memorializing my rulings on Plaintiff and Defendants' cross-motions before signing it; and (4) alleged ex parte communications by my staff with Plaintiff's counsel.

[3] Milton Smith is the President of AIG Baker Development, LLC, a wholly owned subsidiary of Plaintiff, with personal knowledge of the facts of Plaintiff's development in the Township of Deptford. See Smith Dec.at ¶ 1-2.  Smith's Declaration is attached to Plaintiff's first motion for partial summary

The Property is located in a Business Commercial (BC) Zone, as set forth in the Unified Development Ordinance of Deptford Township ("the Code"). Id. at ¶ 5. Among other uses, the BC zone permits "shopping centers, when part of a planned commercial development...." See Code § 17.1(B)(1)(d)-(f), attached as Exhibit A to the Declaration of Richard Hyland ("Hyland Dec.").[4]

Since early 2003, Plaintiff has worked with the Board and its professional staff toward development on the Property of a large-scale shopping center, containing approximately 500,000 square feet of retail space (the "Project"). Smith Dec. at ¶6. At least two major "anchor" tenants were proposed for the Project, which together were projected to occupy half of the retail space. Smith Dec. at ¶7. At the time McGroarty filed this Motion to Recuse, no such anchor tenant had signed a lease to operate within the shopping center. Smith Dec. at ¶8. However, Plaintiff acknowledged in its pleadings that it was in negotiations with numerous potential tenants.[5] Id.

Plaintiff's initial site plan application requested a setback variance along the adjacent right-of-way of state Highway 42, and several design waivers relating to the height of light poles and the size of parking stalls. See Transcript of August 4, 2004 Hearing before the Board ("T1"), attached as Exhibit B to the Declaration of Richard Hyland ("Hyland Dec.") at T1:28, T1:31, T1:34-35. Otherwise, the site plan conformed to all applicable requirements of the Code. T1:32-

---

judgment, filed February 11, 2005.

[4] Richard Hyland is counsel for Plaintiff and submitted a declaration in conjunction with the statement of material facts in support of Plaintiff's first motion for summary judgment.

[5] Among the potential anchor tenants for the Project are Wal-Mart and Sam's Club. See Transcript of August 4, 2004 Hearing before the Board, attached as Exhibit B to the Hyland Dec. at pg. 6-7. In his brief in support of his Motion to Recuse, McGroarty makes clear that his primary opposition to the Project arises out of the possibility that Wal-Mart may become a tenant. See also infra at 5-6.

33.  The Board's professionals recommended approval of Plaintiff's application, including the variance and design waivers Plaintiff requested. Smith Dec. at ¶11.  However, at its June 8, 2004 meeting, the Board unanimously denied Plaintiff's application. Smith Dec. at ¶12.

At the Board's August 4, 2004 meeting, Plaintiff filed a new application and site plan that did not include the setback variance or design waivers, and complied in all respects with the Township's site plan standards (the "Revised Plan"). T1:3, T1:28.  Plaintiff confirmed that no leases had been executed, and that no tenants were confirmed for any retail space within the Project. T1:6-7.  Plaintiff's experts testified that the Revised Plan required no variances and no design waivers. T1:28, T1:29-32, T1:50.  The Board's review professionals also confirmed that the Revised Plan met all the applicable requirements of the Code. Smith Dec. at ¶14; T1:69-70. The Board commenced, but did not conclude, the public comment portion of the August 4, 2004 meeting, and the application was continued until September 8, 2004. Smith Dec. at ¶¶15, 17. Thereafter, Plaintiff filed a revised plan that responded to the technical revision requests of the Board's professionals (the "September Plan"). Smith Dec. at ¶19.  The September Plan was not filed and available for inspection by the public ten days prior to the September 8 meeting; and the Board refused to hear the continued application at the September meeting. Smith Dec. at ¶18. The application was continued to the Board's October 6, 2004 meeting. Smith Dec. at ¶¶ 20-21.

At the August 4, 2004 Board meeting, there was considerable public opposition to Plaintiff's Project based upon an assumption that one of the anchor tenants would be Wal-Mart. Smith Dec. at ¶15.  This assumption persisted despite Plaintiff's continued sworn representations that there were no leases in place for the Project and that negotiations were on-going with many potential lessees. Smith Dec. at ¶16.  Members of the public, including McGroarty, testified that

it was an accepted fact, rather than an assumption, that Wal-Mart would join the Project as an anchor tenant.[6] See T1:9, T1:82-83, T1:97, T1:107, T1:118, T1:142. The Board's planner testified that Plaintiff was under no legal obligation to know with any degree of certainty, or to include with its application, the names of the retail tenants that might or might not become a part of the Project. T1:97-98.

Prior to the September 8, 2004 Board meeting and in response to the growing public opposition to the presence of Wal-Mart as a Project tenant, the Deptford Township Council (the "Township Council") introduced two amendments to its local ordinances which were designed to exclude or regulate certain uses in the BC Zones. Smith Dec. at ¶¶22-26. The first, Ordinance 0.16.04, was intended to reduce "intensity" of activity on a commercial site by reducing the maximum allowable vehicular trips per acre in the commercial districts; the second, Ordinance 0.17.04, purported to regulate the hours of operation of certain businesses within Deptford. See Ordinance 0.16.04 and Ordinance 0.17.04, attached to the Hyland Dec. respectively at Exhibits C and D. At a workshop meeting held approximately an hour prior to its September 7, 2004 public meeting, the Township Council added another provision to Ordinance 0.16.04 which introduced new use categories in the BC Zones entitled "Department Store" and "Discount Store or Club." See Ordinance 0.16.04; see also Smith Dec. at ¶¶22, 23.

The new provision in Ordinance 0.16.04 restricted the maximum permitted size of retail

---

[6] McGroarty testified:
Shouldn't we do what these gentlemen ask—this is America. If everybody knows that the elephant in the room is Wal-Mart and Sam's Club, why don't we deal with the traffic generated by those boxes, and not some shopping center criteria, and get it out in the open? . . . But I see no reason, when we are a town that has already got one Wal-Mart and we're now proposing to receive another Wal-Mart . . . that we accommodate them. I understand that its my opinion, as is the opinion of pretty near everybody that appeared tonight. T1:97, T1:107.

discount stores and clubs to 100,000 square feet. See Ordinance 0.16.04.  The size limitation was directed to certain types of retailers but imposed no size limitations on any other types of retail stores, including "department stores." Id.  Because the proposed amendment significantly affected its application, Plaintiff appeared before the Township Council on October 4, 2004, to oppose its adoption.  At that meeting, however, the Township Council summarily adopted Ordinance 0.16.04 without comment or deliberation. Smith Dec. at ¶25.  Pursuant to the Optional Municipal Charter Law, N.J. Stat. Ann. § 40:69A-1 et seq. (the "Faulkner Act"), which governs the municipality of Deptford, Ordinance 0.16.04 could not take effect earlier than October 24, 2004.[7]

At the start of its October 6, 2004 meeting, the Board voted to go into a closed "executive session," pursuant to N.J. Stat. Ann. § 10:4-12(b)7, to discuss litigation it anticipated might result from its consideration of Plaintiff's application in light of Ordinance 0.16.04. See Transcript of October 6, 2004 Hearing before the Board ("T2"), attached as Exhibit E to the Hyland Dec. at T2:5; see also Smith Dec. at ¶28.  When the public portion of the meeting resumed, the Board addressed Plaintiff's application. T2:3; see also Smith Dec. at ¶29.  The Board announced that in light of the Council's recent adoption of Ordinance 0.16.04, and the mandate of Willoughby v. Planning Bd. of Deptford, 306 N.J. Super. 266 (App. Div. 1997), it no longer possessed the

---

[7] The Optional Municipal Charter Law, commonly referred to as the Faulkner Act, is the statute regulating Deptford's municipal government.  With exceptions not relevant here, § 181(b) of the Faulkner Act imposes a twenty-day waiting period before an ordinance adopted by a municipality within its purview takes effect. See N.J. Stat. Ann. § 40:69A-181(b).  Specifically, the statute states:
No ordinance other than the local budget ordinance shall take effect less than twenty days after its final passage by council and approval by the mayor where such approval is required, unless the council shall adopt a resolution declaring an emergency and at least two-thirds of all the members of the council vote in favor of such resolution. N.J. Stat. Ann. § 40:69A-181(b).

authority to grant Plaintiff preliminary site plan approval.[8] T2:5.  The Board then voted

unanimously to deny Plaintiff's application. T2:10-11; see also Smith Dec. at ¶30.  On November

10, 2004, the Board adopted a written resolution memorializing its decision and stating its

findings of fact and conclusions of law. See Resolution 2004-28, attached to the Hyland Dec. at

Exhibit F.

On October 25, 2004, Plaintiff filed suit against Deptford in the Superior Court of New

Jersey, Gloucester County, challenging its adoption of Ordinances 0.16.04 and 0.17.04 on

procedural and substantive grounds and asserting constitutional claims pursuant to 28 U.S.C. §

1983. Hyland Dec. at ¶12.  Thereafter, the Township Council adopted Ordinance 0.19.04, which

effectively repealed Ordinance 0.16.04 but replaced it with substantively identical provisions.[9]

See Ordinance 0.19.04, attached to the Hyland Dec. at Exhibit I.  On November 24, 2004,

Deptford removed the case from State court to this Court.  On December 15, 2004, Plaintiff filed

an Amended Complaint against Deptford, which added a challenge to Ordinance 0.19.04 on

substantive grounds. See Plaintiff's Amended Complaint, attached to the Hyland Dec. at Exhibit

J.  Plaintiff also filed a separate State court action against the Board, challenging its denial of

Plaintiff's site plan application.  Plaintiff voluntarily dismissed that State court action and re-filed

it in this Court as a companion case to its case against Deptford. See Plaintiff's Complaint,

---

[8] Specifically, the Board stated:
We were just together a few minutes ago and made aware of the fact that, I believe as recent as Monday
evening, our Town Council passed an ordinance that altered our Township's UDO.  It's a brand new
ordinance. . . .Based on that, we feel now that the Planning Board no longer has the authority to continue
to act on this issue.  Based on a failure years ago of a court issue in the Willoughby v. Deptford case.  We
feel as though we're in a position that we have to, at this point, recommend denial of this proposal. T2:5.

[9] In its first motion for partial summary judgment, Plaintiff asserted that the Counsel's adoption
of Ordinance  0.19.04 was a transparent attempt to cure the procedural deficiencies in its adoption of
Ordinance 0.16.04.

attached to the Hyland Dec. at Exhibit K.  On February 9, 2005, Plaintiff's two separate cases were consolidated into this action. See Judge Rosen's February 9, 2004 Order, attached to the Hyland Dec. at Exhibit L.

On February 11, 2005, Plaintiff filed a motion for partial summary judgment in which it argued that it was entitled to preliminary site plan approval as a matter of law, and that Deptford's amendments to its Code were invalid.  While Plaintiff's summary judgment motion was pending, McGroarty filed a motion to intervene, which Judge Rosen granted on April 29, 2005.  On April 25, 2005, Deptford filed a cross-motion for partial summary judgment, urging the Court to dismiss Plaintiff's constitutional claims because Plaintiff presented no evidence to support them.  In a May 12, 2004 letter to the Court, the Board joined in Deptford's cross-motion for summary judgment.  On May 18, 2005, McGroarty filed a cross-motion for summary judgement in which he argued Plaintiff's site plan did not conform to the Deptford Code, and therefore, Plaintiff was not entitled to preliminary site plan approval, notwithstanding the validity of Ordinances 0.16.04, 0.17.04, and 0.19.04.[10]

Following additional motion practice not relevant here, I heard oral argument on the various cross-motions for partial summary judgment filed by the parties. See Transcript of July 20, 2005 Motions ("T3") at T3:3, T3:5, T3:56.  I began the proceedings by denying Defendants' combined motion for partial summary judgment on Plaintiff's constitutional claims. T3:4.

---

[10] Specifically, McGroarty asserted that Plaintiff improperly calculated the total number of parking spaces required under the Deptford Code. See McGoarty's brief in support of his motion for summary judgment at 2-4.  He also asserted that Plaintiff's Project required a "trip generation" variance because of the off-site traffic it would produce. Id. at 5.  Both arguments contradicted the record, which clearly demonstrated that Plaintiff's plan fully conformed with the Deptford Code and required no waivers or variances, as well as Defendants' on-the-record concession of such on July 20, 2005. See infra at n.12.  In this Motion, McGroarty again raises the issue of Plaintiff's alleged incorrect parking space calculation.  However, the matter is settled.

Defendants argued that Plaintiff's failure to present evidence in support of its due process and equal protection claims warranted summary judgment in Defendants' favor.  Plaintiff asserted that such a ruling was premature because discovery had not yet taken place, and thus issues of fact remained.  Id.  I concluded that I could not grant Defendants' motion on the incomplete factual record before me at that time and, accordingly, I denied the motion without prejudice.  Id. at 5.  I then examined Plaintiff's motion for partial summary judgment.  Id.

Plaintiff directly challenged the validity of the amendments to the Deptford Code in its Amended Complaint.  However, in its motion for partial summary judgment, Plaintiff took a different approach.  Plaintiff asserted that it was entitled to statutory by-right approval of its site plan as a matter of law, regardless of the validity of the amendments.  Plaintiff reasoned that pursuant to the twenty-day waiting period in §181(b) of the Faulkner Act, the amendments could not have taken effect earlier than October 26, 2005; thus, they were not in effect on October 6, 2005, when the Board considered Plaintiff's application.  Plaintiff argued that since its site plan fully complied with the Deptford Code on October 6, 2005, the Board should have granted it by-right preliminary approval pursuant to N.J. Stat. Ann. § 40:55D-46(b).[11]  Plaintiff argued that the Board instead relied erroneously on dicta in Willoughby v. Planning Bd. of Deptford, 306 N.J. Super. 266, 270 (App. Div. 1997), and denied its application. T3:31-32.  Accordingly, Plaintiff asserted that it remained entitled to by-right preliminary site plan approval. T2:32-35.

Counsel for the Board confirmed that Plaintiff's site plan fully complied with the

---

[11]  N.J. Stat. Ann. § 40:55D-46(b) requires a planning board to grant preliminary site plan approval to any proposed development that fully complies with relevant local ordinances and the New Jersey Municipal Land Use Law, N.J. Stat. Ann. § 40:55D-1 to -129. See Pizzo Mantin Group v. Township of Randolph, 137 N.J. 216, 228-29 (1994).

Deptford Code as it existed prior to the Township Council's adoption of the amendments.[12]
However, the Board's counsel asserted that the Board was compelled by the "holding" in
Willoughby to delay consideration of Plaintiff's application in light of the Township Council's
adoption of amendments to the Deptford Code which rendered Plaintiff's site plan non-
conforming. T2:6-7; T2:9-10.  Counsel for the Board explained that the Board was forced to
deny Plaintiff's application, rather than delay decision on it until its next scheduled meeting on
November 3, 2004, because the ninety-five-day statutory period within which the Board was
required to decide the application would have expired during such a delay, resulting in automatic
approval.[13]  Counsel argued that allowing such automatic approval would have been tantamount
to usurping the authority of the Township Council as discussed in Willoughby.

I then discussed Willoughby's applicability with the parties. T2:9-10, T2:23-35.  In
Willoughby, the defendant township council (coincidentally, the Township of Deptford), at the
recommendation of the planning board, re-zoned a particular area to accommodate a retail
shopping center proposed by a co-defendant developer. 306 N.J. Super. at 271.  The plaintiffs, an
advocacy group and certain individual objectors, mounted a political campaign to unseat those
members of the council who supported the development, and replace them with members who

---

[12] The relevant portion of the transcript reflects the following exchange:
"THE COURT: Indeed, I think you have conceded in your briefing the plan required no variances or
waivers and was totally conforming to the ordinance that was in effect when the plan was filed.
COUNSEL FOR THE BOARD: That's correct your Honor. There were no variances requests required."
T3:6.

[13] N.J. Stat. Ann. § 40:55D-46(c) provides in relevant part:
Upon the submission of a completed application for a site plan which involves more than 10 acres, or
more than 10 dwelling units, the planning board shall grant or deny preliminary approval within 95 days
of the date of such submission or within such further time as may be consented to by the developer.
Otherwise, the planning board shall be deemed to have granted preliminary approval of the site plan.

did not.  Id.  The plaintiffs succeeded, and the newly composed council passed an ordinance returning the re-zoned area to its original classification.  Id.  During the pendency of the twenty-day waiting period required under § 181(b) of the Faulkner Act, the board, which remained loyal to the ousted members of the council, accelerated consideration of the development application and granted preliminary site plan approval before the effective date of the new zoning ordinance. Id. at 272.

The plaintiffs' filed suit in New Jersey Superior Court, challenging the board's grant of preliminary site-plan approval and the original ordinance, which re-zoned the area and allowed the project to proceed.  Id.  The trial court granted the defendants' motion for summary judgment, based in part on the plaintiffs' failure to timely pursue its challenge of the first ordinance.  Id. at 273.  The Appellate Division reversed, and held that the trial court should have granted the plaintiffs an extension of time to challenge the ordinance, and erred by deciding the case on an incomplete record.  Id.  The panel remanded the case to the trial court for further proceedings.  Id.

Although it had decided the discrete legal questions presented in the case, the Appellate Division nevertheless "consider[ed] it necessary to comment upon" the propriety of the planning board's actions.  Id. at 279.  The panel explained that as a subordinate municipal agency with a limited role, the "planning board should not [have] rush[ed] to grant development approvals under existing zoning before the amendments to the municipality's land use ordinance [could] take effect."  Id.  The panel opined that the planning board "easily could have deferred hearings on [the application] for a brief period to determine whether the proposed ordinance rezoning [the defendant developer's] property would be adopted."  Id.  Finally, the panel noted its disapproval "of the Planning Board's attempt to usurp the Township Council's preeminent role in determining

11

the municipality's land use plan" by working "to preempt the proposed rezoning by completing its review of [the defendant developer's] application before the Township Council could act and by subsequently granting site plan approval after the amendment to the zoning ordinance had been adopted but before it became effective." Id.

     After discussion of Willoughby, I explained that the facts in that case were quite distinct from those before me, and on that basis alone, Willoughby was inapposite. T3:50-52.  More importantly, I concluded that the Appellate Division's admonishment of the planning board in Willoughby did not constitute any part of the court's holding, but was instead, merely dicta.  As such, Willoughby had no controlling authority on the Board, and the Board's reliance on it to deny Plaintiff preliminary site plan approval was error.[14] T3:50.  Because the Board had denied Plaintiff's application on procedural grounds, I remanded the matter to it for completion of public comment and a vote on the merits. T3:55.  In my July 28, 2005 Order memorializing my ruling, I also limited the scope and duration of public comment to a single session, focused on the merits of the plan, without regard to the inappropriate consideration of any proposed or presumed tenants.[15] See id.

     After a brief off-the-record discussion with Plaintiff and Defendants, I went back on-the-

---

[14] I also concluded that the "time of decision rule" was inapplicable in this case and should not impact the Board's vote on remand. T2:53.  I explained that because Plaintiff's application fully complied with the Deptford Code as it existed on October 6, 2005, and would have received preliminary approval if not for the Board's error, equity demanded that on remand the Board evaluate the application under that standard. Id.

[15] At the time of my remand, no potential anchor tenant had signed a lease to do business at the Project.  Thus, the identity of any such tenant was a matter of pure speculation and, in any event, utterly beyond the Board's legitimate power to control. See e.g., Pizzo Mantin Group, 137 N.J. at 228-29 ("[T]he absence of express standards may invite inconsistency, encourage controversy, and lead to arbitrary action by the planning authority.")

record to address McGroarty's cross-motion for summary judgement. T2:56.  I explained to

McGroarty that his arguments regarding parking and off-site traffic issues were best addressed to

the Board during public comment on remand, and not relevant to the questions of the propriety of

the Board's denial of Plaintiff's conforming site plan application. Id. See e.g., Dunkin' Donuts of

N.J. v. Tp. of North Brunswick, 193 N.J.Super. 513, 515 (App. Div. 1984) (planning board is

without authority to deny site plan approval because of existing off-site conditions).

Accordingly, and without objection from McGroarty, I denied his motion for summary judgment.

T2:56.  McGroarty did not file a motion for reconsideration.

## II.     DISCUSSION

McGroarty now seeks recusal pursuant to 28 U.S.C. § 455(a), which provides that "[a]ny

justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding

in which his impartiality might reasonably be questioned."  McGroarty also asserts, somewhat

inartfully, that recusal is warranted in this case pursuant to 28 U.S.C. § 455(b)(1), which provides

that a judge shall self-disqualify where the judge "has a personal bias or prejudice concerning a

party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  Because

McGroarty cannot satisfy the standard for recusal under either relevant provision of 28 U.S.C. §

455, his motion is denied.

Section 455(a) is a "catchall" recusal provision, covering circumstances in which the

judge has an interest in the case or relationship to a party or attorney, as well as circumstances in

which the judge has bias or prejudice. Liteky v. United States, 510 U.S. 540, 548 (1994).  The

statutory language mandates an objective rather than subjective inquiry. Id.  The pertinent inquiry

is "whether a reasonable person knowing all the circumstances would harbor doubts concerning

13

the judge's impartiality." <u>Selkridge v. United of Omaha Life Ins. Co.</u>, 360 F.3d 155, 167 (3d Cir. 2004).  Section 455(b)(1) is a narrower provision that only concerns personal bias or personal knowledge of disputed evidentiary facts. <u>In re Kensington Int'l Ltd.</u>, 353 F.3d 211, 220 (3d Cir. 2003).

A party seeking recusal need not show actual bias on the part of the court, but rather the reasonable possibility of bias. <u>In re Prudential Ins. Co. Sales Litig.</u>, 148 F.3d 283, 343 (3d Cir. 1998).  The mere appearance of partiality is sufficient to require recusal. <u>Haines v. Liggett Group Inc.</u>, 975 F.2d 81, 98 (3d Cir. 1992); <u>Lewis v. Curtis</u>, 671 F.2d 779, 789 (3d Cir.) ("Impartiality and the appearance of impartiality in a judicial officer are the <u>sine qua non</u> of the American legal system."), <u>cert. denied</u>, 459 U.S. 880 (1982).  However, under both §§ 455(a) and 455(b)(1) "beliefs or opinions which merit recusal must involve an extrajudicial factor."[16] <u>Selkridge</u>, 360 F.3d at 167 (quotations and citations omitted).  Bias stemming from facts gleaned during judicial proceedings must be especially strong in order to merit recusal. <u>In re Prudential Ins. Co. Sales Litig.</u>, 148 F.3d at 343.  Indeed, the court must "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." <u>Liteky</u>, 510 U.S. at 555.

In 1974, Congress enacted comprehensive amendments to the § 455. <u>See</u> <u>United States v. Sciarra</u>, 851 F.2d 621, 634 (3d Cir. 1988).  Prior to those amendments, § 455 consisted solely of a prohibition against a judge presiding over a case where the judge had an interest in the case or a relationship to a party. <u>Liteky</u>, 510 U.S. at 546.  The original provision for the recusal of district judges for bias is codified in its current form at 28 U.S.C. § 144, and provides:

---

[16] "'Extrajudicial bias' refers to a bias that is not derived from the evidence or conduct of the parties that the judge observes in the course of the proceedings." <u>United States v. Sciarra</u>, 851 F.2d 621, 634 n.28 (3d Cir. 1988).

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Most of the amendments to § 455 simply spelled out in detail the "interest" and "relationship" grounds of recusal that were contained in the former version of § 455. However, both §§ 455(a) and 455(b)(1) incorporated elements of the "bias and prejudice" recusal set forth in 28 U.S.C. § 144. See Liteky, 510 U.S. at 548. As such, because 28 U.S.C. § 455 does not set forth a specific procedure for seeking a judge's recusal, "courts look for guidance to the procedural requirements of § 144." Vangarelli v. Witco Corp., 808 F. Supp. 387, 389 (D.N.J. 1992) (Rodriguez, J.). The submission of affidavits pursuant to § 455, although not required, is commonplace. Cf. Sciarra, 851 F.2d at 625 n.12 ("There is considerable authority for the proposition that the factual accuracy of affidavits submitted pursuant to 28 U.S.C. § 455 may be scrutinized by the court deciding the motion for recusal."). Although it does not affect my analysis, it is worth noting that none of the allegations in McGroarty's Motion are supported by affidavit.

McGroarty argues that my rulings on the parties' prior motions and my treatment of him in this litigation are the result of bias in favor of Plaintiff, or, alternatively, present the appearance of such bias, requiring recusal under 28 U.S.C. § 455. He offers four examples he claims demonstrate my bias: (1) my election not to hear, during July 20, 2005 argument on the parties' cross-motions for summary judgment, oral argument from McGroarty in support of his motion against Plaintiff; (2) later the same day, not inviting McGroarty to participate in an off-the-record settlement conference between Plaintiff and Defendants; (3) my alleged failure to comply with L. Civ. R. 58.1(b), and allow McGroarty seven days to object to the form of order memorializing my rulings on Plaintiff and Defendants' cross-motions before signing it; and (4)

alleged ex parte communications by my staff with Plaintiff's counsel.   As I have stated, McGroarty's mere disagreement with my prior rulings in this case cannot constitute the showing required to warrant recusal. Liteky, 510 U.S. at 555;  Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1357 (3d Cir. 1990).   The Supreme Court has made clear that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" because, "[i]n and of themselves, they cannot possibly show reliance upon an extrajudicial source." Liteky, 510 U.S. at 555.  The Court has held that "[a]lmost invariably" the proper relief for a litigant disappointed by a judge's prior ruling is an appeal, not a motion for recusal. Liteky, 510 U.S. at 555.

Before proceeding to an analysis of McGroarty's specific allegations, I note my keen awareness of the importance of the appearance of impartiality in judicial proceedings.  Indeed, § 455 "concerns 'the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted.'" Alexander v. Primerica Holdings, 10 F.3d 155, 162 (3d Cir. 1993).  That said, however, I emphasize that McGroarty's Motion is utterly without merit.  McGroarty does not point to any extrajudicial source of bias.  Rather, he relies on events taking place solely within the course of this litigation as the basis of my alleged bias.  McGroarty's specific assertions, individually and collectively, fall far short of satisfying the rigorous standard established by the Supreme Court to demonstrate bias when no extra-judicial source is involved. See e.g., Liteky, 510 U.S. at 555.

McGroarty's Motion is before the Court because of his simple refusal to accept that I could have ruled as I did on the parties' various prior motions without harboring favoritism for Plaintiff.  A judge's duty, as it has been described by others, is simply to call balls and strikes.[17]

_____

[17]  See e.g., Hearing Before the Senate Judiciary Comm. on the Nomination of The Honorable John G. Roberts, U.S.C.J., to be the Chief Justice of the United States, 109th Cong. (Sept. 12, 2005),

My rulings in this case, as in all cases over which I preside, have been based consistently on my neutral application of the law to the facts.  Nothing more.  The proper avenue of relief here is appeal following final judgment.  In any event, for the sake of a complete record, I will discuss McGroarty's individual allegations and why they are not remotely sufficient evidence of the "deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky, 510 U.S. at 555.

1.    **Oral Argument on McGroarty's Motion For Summary Judgment**

McGroarty argues that my decision to deny him the opportunity to present oral argument on his cross-motion for summary judgment evidences my bias in favor of Plaintiff.  However, as McGroarty is certainly aware, Federal Rule of Civil Procedure 78 grants a district judge wide discretion to decide whether to hear oral argument on a particular motion, or instead, to decide it on the papers.  With regard to summary judgment motions, the Third Circuit has held that "[w]hile Rule 56 speaks of a 'hearing,' we do not read it to require that an oral hearing be held before judgment is entered.  An opportunity to submit written evidence and argument satisfies the requirements of the rule." Anchorage Associates v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 176-77 (3d Cir. 1990).[18]  Nor does the Due Process Clause of the Fifth Amendment

available at http://www.washingtonpost.com/wp-dyn/content/article/2005/09/13/AR2005091300693.html (statement of John G. Roberts) ("[I]t's my job to call balls and strikes and not to pitch or bat.").

[18] The majority of circuit courts have reached similar conclusions. See Cray Communications, Inc. v. Novatel Computer Sys., 33 F.3d 390, 396 (4th Cir. 1994) (oral hearing on summary judgment at discretion of trial court); Chrysler Credit Corp. v. Cathey, 977 F.2d 447, 449 (8th Cir. 1992) ("hearing" on summary judgment motion may consist of written rather than oral argument); Arrieta-Gimenez v. Arrieta-Negron, 859 F.2d 1033, 1042 (1st Cir. 1988) (same); Geear v. Boulder Community Hospital, 844 F.2d 764, 766 (10th Cir.) (district court review of briefs and other materials submitted in support of motion satisfied "hearing" requirement of Rule 56), cert. denied,488 U.S. 927 (1988); Donaldson v. Clark, 819 F.2d 1551, 1555 (11th Cir. 1987) ("Rule 56 does not require that an oral hearing be held on a summary judgment motion"); Langham-Hill Petroleum Inc. v. Southern Fuels Co., 813 F.2d 1327, 1330 (4th Cir.) ("there is no absolute requirement that a ruling on a motion for summary judgment be preceded

compel oral argument on civil motions. <u>See e.g.</u>, <u>Greene v. WCI Holdings Corp.</u>, 136 F.3d 313,

316 (2d Cir. 1998) ("we find no merit in [appellant's] claim that a dismissal of a complaint

without an oral hearing violates due process."); <u>United States v. One 1974 Porsche 911-S</u>, 682

F.2d 283, 286 (1st Cir. 1982) ("There is no constitutional right to oral argument on a summary

judgment motion."); <u>Dayco Corp. v. Goodyear Tire & Rubber Co.</u>, 523 F.2d 389, 391 (6th Cir.

1975) (denial of an oral hearing before granting a motion to dismiss does not violate

"fundamental notions of fairness and due process of law"); <u>Spark v. Catholic Univ.</u>, 510 F.2d

1277, 1280 (D.C. Cir. 1975) ("due process does not include the right to oral argument on a

motion"); <u>Dredge Corp. v. Penny</u>, 338 F.2d 456, 464 n.14 (9th Cir.1964) ( "The opportunity to be

heard orally on questions of law is not an inherent element of procedural due process, even where

substantial questions of law are involved.").  Accordingly, I had no obligation to allow

McGroarty to make an oral presentation on July 20, 2005.

   I elected to hear argument on Plaintiff's motion for partial summary judgment because of

the complexity and difficulty of the legal issues presented therein.  By contrast, based on

McGroarty's written submission, I concluded that oral argument on his motion was unnecessary.

McGroarty argued that Plaintiff's site plan did not fully conform to the Deptford Code because it

lacked adequate parking and failed to address certain off-site traffic issues.  My careful review of

the transcript of the Board's October 6, 2005 meeting, among other things, convinced me that

Plaintiff's site plan fully conformed to the Deptford Code.  Indeed, I note that McGroarty's

position not only conflicted with the evidence in the record, but also directly contradicted the

---

by a hearing"), <u>cert. denied,</u>484 U.S. 829 (1987); <u>Grigoleit Co. v. United Rubber, Cork, Linoleum and</u>
<u>Plastic Workers of America Local 270</u>, 769 F.2d 434 (7th Cir. 1985) ("the type of hearing required under
rule 56(c) need not include oral argument").

concession made by counsel for the Board at argument that Plaintiff's plan was fully-conforming. See supra at n.12.

My decision to limit oral argument on July 20, 2005, was intended to minimize confusion and delay resulting from discussion of issues that required no further explication.  As I advised at argument, McGroarty's contentions were a matter for public comment before the Board on remand.  In any event, my determination that I did not require argument from McGroarty was a permissible exercise of my discretion under F. R. Civ. P. 78, and cannot be objectively perceived as demonstrating bias in favor of Plaintiff.

**2.      The Settlement Conference between Plaintiff and Defendants**

McGroarty alleges that my decision to exclude him from an informal settlement conference I conducted with Plaintiff and Defendants after deciding their motions on July 20, 2005, demonstrates bias in favor of Plaintiff.  The argument is without merit.  While I will not comment on the specific substance of the discussions, the conversation was limited to implementation of the ruling I had just made, as well as brief consideration of Plaintiff's remaining constitutional claims.  McGroarty had no absolute right to be present at the conference and nothing meaningful to contribute.  My decision to exclude him was a proper exercise of discretion and cannot be reasonably viewed as creating the appearance of impartiality.

While McGroarty is a party to this case by virtue of his Intervenor status, he is not a member of the Board and could not implement my ruling remanding Plaintiff's application to the Board.  Nor does he have an interest in the disposition of Plaintiff's § 1983 claims against

Defendants.[19]  McGroarty certainly has no authority to negotiate on behalf of Defendants, nor any

independent right to participate in Defendants' efforts toward settlement.  Consequently,

McGroarty's participation in the conference I held with Plaintiff and Defendants was wholly

unnecessary.  I excluded him to facilitate an efficient discussion of the parties' relative interests

regarding implementation of my ruling, and settlement of claims in which McGroarty had no

legitimate interest.  Thus, his lack of participation cannot objectively be viewed as evidence of

bias in favor of Plaintiff.

### 3.      Local Civil Rule 58.1

McGroarty argues that I again exhibited bias in favor of Plaintiff when I allegedly failed

to comply with Local Civil Rule 58.1(b), which provides a seven-day window for a losing party

to object to the form of order prepared by a victorious adversary.[20]  Specifically, McGroarty

asserts that I frustrated his right to object to the form of my July 28, 2005 Order, when I signed it

the same day I received it from Plaintiff.  McGroarty contends that I should have held the

---

[19] By virtue of his status as a permissive Intervenor, McGroarty's participation in this litigation is subject to reasonable conditions to avoid delay or prejudice. Ionian Shipping Co. v. British Law Ins. Co., 426 F.2d 186, 191-92 (2d Cir. 1970).  Federal Rule of Civil Procedure 24(b)(2) governs permissive interventions and states in relevant part: "[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Here, the "main action" upon which McGroarty 's intervention was predicated was Plaintiff's challenge to the Board's denial of its site plan application.  Consequently, after I decided the various motions relating to that main issue, McGroaty's interests in this case no longer intersected with Defendants'.

[20] Local Civil Rule 58.1(b) provides:
In all cases contemplated by Fed. R. Civ. P. 58(2) and when the Court makes any judgment as defined in Fed. R. Civ. P. 54(a), the prevailing party shall, within five days after determination, submit a judgment or order to the Court on notice to his or her adversary. Unless the Court otherwise directs, if no specific objection to that judgment or order with reasons therefor is received from the adversary within seven days of receipt of the prevailing party's judgment or order, the judgment or order may be signed by the Court. If such an objection is made, the matter may be listed for hearing at the discretion of the Court.

proposed order for seven days to afford him the opportunity to review it and lodge any objections to its form.  While McGroarty accurately characterizes the intent of L. Civ. R. 58.1(b), his arguments are ultimately meritless because, among other reasons, until now, he has never raised this issue, and even now lodges no specific objection to any provision in the Order.  Rather, McGroarty  complains solely that he was denied the opportunity to object.

The May 28, 2005 Order at issue here memorialized my rulings on Plaintiff's first motion for partial summary judgment and Defendants' cross-motion for partial summary judgment.  On August 1, 2005, I filed a separate Order memorializing my ruling on McGroarty's cross-motion for summary judgment.  It is worth noting that McGroarty never formally filed opposition to Plaintiff's motion for partial summary judgment against Defendants.  Nor did he ever formally join in Defendants' cross-motion for partial summary judgment against Plaintiff.  While he remains an "adversary" to Plaintiff's motion in the technical sense, whether he may be accurately characterized as such as contemplated under L. Civ. R. 58.1(b) is at least subject to interpretation.  In any event, Defendants did not object to any of the provisions of my May 28, 2005 Order, and McGroarty's has not specified any provisions with which he disagrees.

In addition, by its express terms, L. Civ. R. 58.1(b) requires the prevailing party to submit a form of order within five days of the Court's judgment.  I decided Plaintiff's and Defendants' cross-motions on July 20, 2005.  Plaintiff did not submit a proposed form of order until eight days later, on July 28, 2005.  Both Defendants had already consented to the form of order.  Had McGroarty objected to Plaintiff's late submission, and assuming he was "an adversary" under the Rule, I might view his arguments here as more than an attempt to color a technical rule violation as an example of bias against him.  Instead, not only did McGroarty remain silent regarding

Plaintiff's late submission, at no time thereafter did he inform the Court of his desire to object to any portion of the July 28, 2005 Order.

Notwithstanding my doubts about the seriousness of McGroarty's argument on this issue, I conclude it lacks substantive merit.  To the extent I may not have strictly complied with L. Civ. R.. 58.1(b), my inadvertent error hardly "reveal[s] such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky, 510 U.S. at 555.

### 4.      Alleged Ex Parte Communications

Finally, McGroarty alleges that I, or members of my staff, engaged in ex parte communications with counsel for Plaintiff.  He also claims that an improper informality exists between my chambers and Plaintiff's counsel.  The allegations are patently false.  McGroarty asserts that during a visit to the Office of the Clerk of the Court ("Clerk's Office" or "Court Clerk"), he became aware of two entries on the docket sheet for this case, dated August 2 and 3, 2005.  The first entry noted that this case had been terminated; the second that it had been reopened.  McGroarty asserts that an employee of the Clerk's Office informed him that this case was terminated but reopened "at the direction of the judge's chambers because a call had been received from [P]laintiff attorney's office [sic] that 'there still were issues to be resolved.'" McGroarty's "Memorandum of Law In Support of Recusal Application" ("McGroarty's Recusal Br.) at 5.  He claims outrage over the alleged "inappropriate" communication between Plaintiff's counsel and my chambers over this administrative matter.

In a letter opposing McGroarty's Motion to Recuse, Plaintiff's counsel explains that after my rulings on the parties' various motions on July 20, 2005, his associate received an electronic transmission from the Clerk's Office noting that this case had been terminated administratively.

22

See Plaintiff's October 27, 2005 Letter Opposition to McGroarty's Motion to Recuse ("Plaintiff's Letter Br.") at 2.  Thereafter, the associate placed a telephone call to my chambers and informed my former law clerk that Plaintiff's motion had sought only partial summary judgment, and that certain claims remained undecided. Id.  He requested that the administrative error be cured, and the case be reopened. Id.  Plaintiff's counsel asserts that no further discussion took place. Id.

To be sure, ex parte communications are "'anathema in our system of justice.'" In re Kensington Intern. Ltd., 368 F.3d 289, 309 (3d Cir. 2004) (quoting In re School Asbestos Litig., 977 F.2d 764, 798 (3d Cir.1992)).  If a judge engages in ex parte conversations with the parties or outside experts, the adversarial process is not allowed to function properly and there is an increased risk of an incorrect result. In re Kensington Intern. Ltd., 368 F.3d at 309.  "Attuned to that concern, the Code of Conduct for United States Judges cautions that a judge should 'neither initiate nor consider ex parte communications on the merits, or procedures affecting the merits, of a pending or impending proceeding.'" Id. at 310 (quoting Code of Conduct for U.S. Judges Canon 3 § A(4) (2003)).

Among McGroarty's various allegations, this claim is the most insidious and inflammatory.  On at least two occasions in his Brief to this Court, McGroarty notes that he has practiced law for thirty years. McGroarty's Recusal Br. at 1, 5.  Over the course of that time, McGroarty claims to have "used the mails and involved everyone in the circle" in all routine communications "regarding the status of [a] case." Id. at 5.  While McGroarty is free to adhere to as strict a standard as he prefers, surely he is well aware that communications between attorneys and a judge's chambers for the purpose of scheduling and disposing of certain administrative matters are routine occurrences, and expressly permitted. See Code of Conduct for U.S. Judges

Canon 3 Commentary to § A(4) (2003) ("The proscription against [ex parte] communications concerning a proceeding ... is not intended to preclude communications between a judge and lawyers, or parties if unrepresented by counsel, concerning matters which are purely procedural, such as those which pertain to scheduling, and which in no way bear on the merits of the proceeding....") (emphasis added).

The call placed to my chambers by Plaintiff's counsel was not inappropriate, nor was the conduct of my former law clerk in receiving it.  While Plaintiff's counsel could have called the Office of the Clerk to address this matter, he was not required to do so to avoid the appearance of impropriety.  My chambers receives innumerable telephone inquires from attorneys and their representatives inquiring about any imaginable administrative issue.  Such "purely procedural" calls "in no way bear on the merits of the proceeding[s]" to which they are related and are not ex parte communications. Id.  Indeed, they are commonplace elements of the modern practice of law.  More importantly, the communication over which McGroarty complains occurred after I had ruled on all of the motions before me.  Consequently, it could not have affected their disposition whatsoever.  No reasonable inference of bias can be drawn from McGroarty's allegation.

**III.    CONCLUSION**

In the present Motion to recuse pursuant to §§ 455, McGroarty points to no extrajudicial source of bias on the part of the Court.  Instead, he asserts a list of baseless allegations arising in the course of these proceedings to animate an otherwise phantom menace of bias.  However, the record in this case simply does not support McGroarty's claims of bias.  The various unsupported allegations that Defendant has cobbled together fall far short of demonstrating the deep-seated

favoritism or antagonism upon which a bias motion must be based when the alleged bias is

formed through events occurring in the course of judicial proceedings. <u>Liteky</u>, 510 U.S. at 555.

Accordingly, McGroarty's Motion to Recuse is denied.

      An appropriate order shall follow.


                                        <u>/s/ Freda L. Wolfson</u>
                                        The Honorable Freda L. Wolfson,
                                        United States District Judge


Dated: January 10, 2006.